AFFIDAVIT OF MATTHEW PASS

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------------------x
ADWEEK, LLC,

                        Plaintiff,              **AFFIDAVIT**

       - against –                   Index no: 654890/20

ERIC POMPEI,

                        Defendant.
-----------------------------------------------------------------------x

STATE OF NEW YORK   )
                        ) SS.:
COUNTY OF NEW YORK)

       MATTHEW PASS, being duly sworn, deposes and says:

       1.     That I am the Chief Financial Officer of Adweek, LLC, ("Adweek") a Delaware Company authorized to do business in New York and having its principle place of business at 261 Madison Avenue, 8th Floor, New York, New York 10016;

       2.     That I submit this affirmation in further support of Adweek's motion for a temporary restraining order and a preliminary injunction (the "Motion") against defendant Eric Pompei;

       3.     That I am familiar with the facts and circumstances of the case both from my personal involvement in the matter and from my review of the relevant documents and conversations with the other employees of Adweek;

       4.     That Adweek Adweek provides news and insight on and holds leading industry events for the brand marketing ecosystem and is owner of Brandweek® which specifically focuses on brand marketers.;

       5.     Adweek operates throughout the United States and works with customers from coast to coast including California and New York.;

1

6.    That as a matter of policy, Adweek requires all new employees to sign a non-disclosure/non-compete agreement as a condition of employment with Adweek;

7.    That in September of 2018, Adweek offered a position with the Company to Eric Pompei which he accepted;

8.    That on September 19, 2018, defendant executed an agreement entitled Confidentiality, Non-Solicitation, Assignment of Invention and Non-Compete Agreement ("Agreement") which required him to refrain from taking or utilizing confidential information belonging to Adweek and from working for any competitor of Adweek for a period of six months from the date of termination. A copy of the Agreement is annexed hereto as Exhibit "A";

9.    Pursuant to the terms of the aforementioned Agreement, the parties agreed that it would be construed, interpreted and enforced in accordance with the laws of the State of New York without regard to any conflict of law principles; (Agreement at ¶8(d))

10.    The Agreement also states that the Employee consents to jurisdiction and venue in the State of New York and that, "…Employee expressly waives any and all objections he/she may have to venue in any such courts;" (*Id.*)

11.    Pursuant to the terms of the Agreement, Pompei promised (1) not to disclose or utilize any of Adweek's confidential information, and (2) for a period of six months following the termination of his employment, not to work for any competitor of Adweek;

12.    In pertinent part, the Agreement states:

PART 1:  CONFIDENTIAL INFORMATION

(a) Employee acknowledges and agrees that in the course of his employment with Company, he/she shall have access to and become acquainted with substantial Confidential Information of Company, and in future shall contribute to such Confidential Information.

(b) Employee agrees that Employee shall not, either during Employee's employment with Company … or at any time thereafter, except as required in the performance of Employee's services for a Related Company, (i) use any Confidential Information in any manner whatsoever, (ii) disclose or divulge any Confidential Information, except to the extent

required by law (but only after Employee has provided Company with reasonable notice and opportunity to take legal action against such legally required disclosure) or (iii) remove or aid in the removal from the premises of any Related Company any Confidential Information or any property or material relating thereto.

* * *

PART 5:  NON-COMPETE

    (a)  During the term of Employment and until six (6) months after the Employment Termination Date for any reason whatsoever, Employee agrees that he/she shall not, alone or with others, directly or indirectly, participate, engage, render services to or become interested in . . . any business activity that is in competition with, or from the then current or contemplated business of Adweek. In regards to this paragraph the term "competition with" shall mean a group that competes directly in the publishing industry covering putting on events for, or producing or distributing news, information or education programs focused on the advertising and/or marketing sector ...

13.    The Agreement goes on to define Confidential Information to be trade secrets and all information of a business, financial, marketing, technical or other nature relating to the business of the Company, know-how, pricing policies and any customer or vendor and event list as well as any prospective customer names.

14.    Adweek's Confidential Information is not generally known to the public or to others in the industry and such information is only shared with Adweek's employees under the strict confidentiality provisions contained in the Agreement;

15.    Adweek does not reveal its Confidential Information to its competitors or the general public;

16.    Adweek takes significant measures to protect the secrecy of its Confidential Information;

17.    Adweek derives great value from its Confidential Information. Protecting the secrecy of such information enables Adweek to maintain its competitive advantage in the brand marketing and advertising industry;

3

18.    Adweek's Confidential Information is vital to its ability to solicit and maintain its customers, profit margins and good will;

19.    Adweek has developed its Confidential Information as a result of considerable efforts and significant labor and capital investment;

20.    In the hands of Adweek's competitors, Adweek's Confidential Information would be of great value and provide them with a major competitive advantage. Access to such information would allow competitors to undercut Adweek rates, solicit Adweek's customers and undermine Adweek's ability to compete in the brand marketing and advertising industry;

21.    In addition, a competitor could use Adweek's Confidential Information to induce an otherwise satisfied Adweek customer to demand renegotiations and downward rate adjustments thereby resulting in a dilution of Adweek's revenues;

22.    The terms of Adweek's Agreement are specifically tailored to protect these interests;

23.    Pompei terminated his employment with Adweek in September of 2020. At the time, he was reminded of the terms of the Agreement and indicated that he was aware of its terms and would abide by them;

24.    Over the next few days after Pompei left Adweek, Adweek conducted a search of their electronic records, including his computer and their CRM system and it was determined that he had accessed and downloaded a file which consisted of over a hundred pages of Adweek's current and potential customers, events lists and rates charged.;

25.    The customers and potential customers were situated all over the country including in New York and California;

26.    We also learned that Pompei intended to work for a direct competitor named Brand Innovators despite the explicit terms of the Agreement;

4

27.     Now armed with a copious amount of Adweek's Confidential Information and working for a direct competitor, Pompei poses a significant threat to the business of Adweek;

28.     On September 23, 2020, we had our counsel send a letter to Pompei demanding that he refrain from any activities that would violate the Agreement. The letter requested a written response from Pompei confirming that he would honor the Agreement and that he did not possess any originals or reproductions of any documents containing Confidential Information belonging to Adweek. A copy of the letter is annexed hereto as Exhibit "B";

29.     In an effort to avoid the need for protracted and costly litigation, we authorized our counsel to indicate to Pompei in the letter that rather than going to Court to enforce Adweek's rights, we would agree to reduce the non-compete period from six months to three months;

30.     In the letter, our counsel gave Pompei 72 hours to comply and send us his written acknowledgment;

31.     To date, Pompei has failed to respond to Adweek's request;

32.     Pompei possesses originals and/or reproductions of Adweek's documents that contain and reflect confidential information including a list of Adweek's current and potential customers;

33.     Based upon the foregoing, Adweek is under a reasonable apprehension that Pompei will breach the Agreement by commencing employment with Brand Innovators, a direct competitor of Adweek, in a position substantially similar to the position held at Adweek, and that Pompei will utilize the Confidential Information that he stole from Adweek to aid him in his new position and cause irreparable harm to Adweek;

34.     As a result, we are seeking a declaratory judgement to determine the rights and obligations of the parties under the Agreement as it relates to Pompei's acceptance of a position of employment with Brand Innovators as well as accompanying temporary, preliminary and permanent injunctive relief in accordance with the terms of the Agreement;

5

35.     Absent the relief sought, it is all but certain that Adweek will suffer irreparable harm, for which there is no adequate remedy at law;

36.     The injunctive relief sought herein will not prejudice defendant as his conduct is prohibited by contract which he executed and by law and the scope of relief sought herein seeks only to bring defendant's conduct within compliance of his existing legal obligations;

37.     No prior request for the relief sought herein has been made to this or any other court.

Dated: New York, New York
        October 1, 2020

                                        Matthew Pass

Sworn to before me this 1st
day of October, 2020

Notary Public

        JEFFREY LITVACK
  Notary Public, State of New York
        No. 02LI5062823
   Qualified in New York County
Commission Expires _____
            3/18/ 2023

6